**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANTHONY L. HOLMES,<br><br>        Defendant. | Criminal Action No. 02-24<br>Chief Judge Beryl A. Howell |

## <u>MEMORANDUM OPINION</u>

After six prior state or local felony convictions for drug offenses, three of which also included gun offenses, the defendant, Anthony Holmes, was stopped driving a speeding van on December 21, 2001, and ultimately arrested, after throwing punches and kicks at the arresting officer, when police found a loaded nine millimeter semi-automatic gun, with extra ammunition, under the driver's seat and 9.2 grams of crack cocaine on his person. *United States v. Holmes*, 385 F.3d 786, 787, 788–89 (D.C. Cir. 2004). He was subsequently convicted, after a jury trial, of unlawful possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 1), unlawful possession with intent to distribute 5 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii) (Count 2), and using, carrying and possessing a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1) (Count 3). Jury Verdict Form (Oct. 31, 2002) at 1–2, ECF No. 22; Judgment & Commitment Order (Mar. 13, 2003) ("2003 J&C") at 1, ECF No. 27. For these convictions, the defendant was sentenced, in 2003, to two concurrent terms of 360 months' imprisonment on Counts 1 and 2, and a consecutive term of 60 months' imprisonment on Count 3. 2003 J&C at 1–2. Following the grant of his motion, under 28 U.S.C. § 2255, the defendant had a plenary resentencing hearing in 2011, after the effective date of the Fair Sentencing Act of 2010

("FSA"), and was resentenced to a below-Guidelines sentence of two concurrent terms of 240 months' imprisonment on Counts 1 and 2, and a consecutive term of 60 months' imprisonment on Count 3, totaling a 25-year prison sentence, notwithstanding his request to be resentenced at the mandatory minimum penalty required by his gun convictions, on Counts 1 and 3, of 20 years' imprisonment. Amended Judgment at 1–3 (May 25, 2011), ECF No. 98; Statement of Reasons (May 25, 2011) (sealed) ("Resentencing SOR") at 2, 3, ECF No. 99; Resentencing Tr. (May 12, 2011) at 10:11-17, ECF No. 122.

Now, after serving approximately 17.5 years of his 25-year prison term, and with "approximately 3 years of good time and jail credit," the defendant claims entitlement to a third sentencing hearing, and again presses the same request rejected in 2011 that his sentence be reduced to a collective term of "20 years of imprisonment," allowing for his "immediate release," based on Section 404 of the First Step Act of 2018 ("First Step Act"), Pub. L. 115-391, § 404, 132 Stat. 5194, 5222 (2018). Def.'s Mot. Reduce Sentence Pursuant to First Step Act of 2018 ("Def.'s Mot.") at 2, 10 & n.5, ECF No. 123.

Both the government and defendant agree that the defendant is eligible for a sentence reduction under Section 404 and that the limitations set out in Section 404(c) on the Court's power to grant such relief are inapplicable. Gov't Resp. at 1, 10 n.7; Def.'s Mot. at 2, 3 n.1. The parties part ways only as to whether the Court should exercise discretion to reduce his sentence. Gov't Opp'n at 14, ECF No. 126; Def.'s Mot. at 10. The parties are wrong. For the reasons discussed more fully below, the defendant's 2011 sentence was "previously imposed . . . in accordance with the amendments made by" FSA's sections 2 and 3, and as a result, the defendant's pending motion is barred by the limitations in Section 404(c).

# I.   BACKGROUND

The defendant's pending Section 404 motion is the defendant's third bite at the apple to obtain a sentence for his gun and drug convictions at the mandatory minimum applicable to his gun offenses in Counts 1 and 3.  As necessary context for understanding the parties' arguments and resolution of the defendant's motion, the defendant's two prior sentencing proceedings are detailed below.

## A.   The Defendant's Initial 2003 Sentencing

At his initial sentencing hearing, on February 28, 2003, *see* Min. Entry (Feb. 28, 2003), the defendant faced a combined 20-year mandatory minimum term of imprisonment based on his 18 U.S.C. § 922(g)(1) conviction on Count 1, which carried a 15-year mandatory minimum and up to life sentence, under 18 U.S.C. § 924(e), due to his at least three previous serious drug offenses, and his 18 U.S.C. § 924(c)(1)(A)(i) conviction on Count 3, which carried a mandatory consecutive sentence of 5 years' imprisonment.  Presentence Investigation Report (Feb. 21, 2003) ("2003 PSR") at 1, ¶ 71, ECF No. 128.  The defendant's conviction on Count 2, for unlawful possession with intent to distribute 5 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii), carried a mandatory minimum sentence of 10 years and up to life in prison, due to the defendant's prior felony drug convictions.  *Id.* at 1 (citing 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii)); *see also* Gov't's Notice of Applicability of Enhanced Penalties and Information Concerning Def.'s Prior Convictions Pursuant to 21 U.S.C. § 851(a)(1) at 1–2, ECF No. 18 (listing defendant's six prior felony convictions for illegal drug and gun offenses).[1]

---

[1]    The government's Notice and Information listed the following six prior felony convictions: (1) Possession of Cocaine and Possession of a Firearm While Possessing Cocaine (Greensville Cty., Va. Circuit Ct. No. 98-7072, 1999); (2) Attempted Distribution of Cocaine (D.C. Super. Ct. No. F-1794-92, 1993); (3) Attempted Possession With Intent to Distribute Cocaine and Carrying a Pistol Without a License (D.C. Super. Ct. No. F-1087-90, 1990); (4) Possession With Intent to Distribute Cocaine and Unlawful Possession of a Pistol (D.C. Super. Ct. No. F-1032-87, 1987); and (5, 6) Possession With Intent to Distribute PCP, twice (D.C. Super. Ct. Nos. F-1027-86 and F-9093-

Count 2's 10-year mandatory minimum had no effect on the overall 20-year mandatory minimum sentence required to be imposed due to the defendant's two gun convictions.

Under the U.S. Sentencing Commission's 2002 GUIDELINES MANUAL, the defendant's total offense level for Counts 1 and 2 was 37. 2003 PSR ¶¶ 12, 21. Specifically, in determining the applicable sentencing range, the guidelines were applied as follows: (1) his conviction for unlawful possession of a firearm and ammunition by a convicted felon, 18 U.S.C. § 922(g)(1), on Count 1, and unlawful possession with intent to distribute 5 grams or more of cocaine base, 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii), on Count 2, were grouped together, pursuant to U.S.S.G. § 3D1.2(c), 2003 PSR ¶ 12; (2) the base offense level on Count 1 was 24, U.S.S.G. § 2K2.1(a)(2), and on Count 2 was 26, U.S.S.G. § 2D1.1(c)(7), for an offense involving 9.2 grams of cocaine base, and pursuant to U.S.S.G. § 3D1.2(a), the higher offense level of 26 was used, 2003 PSR ¶¶ 12, 13; and (3) two levels were added for possession of a firearm and ammunition in connection with another felony offense, U.S.S.G. § 2D1.1(b)(1), 2003 PSR ¶ 14, for an adjusted offense level of 28 on the grouped Counts 1 and 2, *id.* ¶ 18. That adjusted offense level jumped to a final offense level of 37, however, because the defendant qualified as a "career offender," pursuant to U.S.S.G. § 4B1.1(b), and the maximum statutory penalty on Count 2 was life in prison. 2003 PSR ¶¶ 19, 21, 71.[2]

The defendant's Criminal History Category was VI for three reasons: the defendant had 22 criminal history points, 2003 PSR ¶ 35; he was a "career offender," pursuant to U.S.S.G. § 4B1.1, 2003 PSR ¶ 36; and he was an "armed career criminal, pursuant to U.S.S.G. §

---

85, both in 1986). Gov't Notice of Applicability of Enhanced Penalties and Information Concerning Def.'s Prior Convictions Pursuant to 21 U.S.C. § 851(a)(1) at 1–2; *see also* 2003 PSR ¶¶ 26–31 (same).

[2]     The defendant also qualified as "an armed career criminal . . . subject to an enhanced sentence" under 18 U.S.C. § 924(e), but the "offense level from U.S.S.G. § 4B1.1 result[ed] in the greater offense level," and as a result, the "offense level applicable to U.S.S.G. § 4B1.1" was used, "pursuant to U.S.S.G. § 4B1.4(b)." 2003 PSR ¶ 19.

4B1.1(4)(c)," 2003 PSR ¶ 37. Combined with his Final Offense Level of 37, the defendant's sentencing range under the 2002 GUIDELINES MANUAL, pursuant to U.S.S.G. § 4B1.1(c)(2), was 360 months to life in prison, plus a 60-month mandatory minimum consecutive sentence for the Count 3 gun conviction, under 18 U.S.C. § 924(c)(1)(A)(i), since "adding the mandatory minimum consecutive penalty required by" the § 924(c) count "to the minimum and the maximum of the otherwise applicable guideline range determined for the count(s) of conviction other than the" § 924(c) count, U.S.S.G. § 4B1.1(c)(2), was greater than the 360-months-to-life range in "the career offender table listed in" U.S.S.G. § 4B1.1(c)(3) for § 924(c) offenders, 2003 PSR ¶ 23. This resulted in a guideline range of 420 months (35 years) to life. 2003 PSR ¶¶ 23, 72; 2003 J&C at 6 (adopting the factual findings and guideline application in the 2003 PSR).

Under the then-mandatory GUIDELINES MANUAL, then-presiding Judge Henry H. Kennedy, Jr. sentenced the defendant to concurrent terms of 360 months' imprisonment on Counts 1 and 2, and a consecutive term of 60 months' imprisonment on Count 3, totaling 420 months (35 years), followed by concurrent supervised release terms of 5 years on Counts 1 and 3 and 8 years on Count 2. 2003 J&C at 2–3. On direct appeal, the D.C. Circuit affirmed the defendant's convictions. *See Holmes*, 385 F.3d at 787.

## B. The Defendant's 2011 Resentencing

In February 2006, the defendant filed a § 2255 motion to vacate his sentence based on ineffective assistance of trial counsel, *see* Def.'s § 2255 Mot., ECF No. 41, and later amended this motion, in June 2007, to request resentencing in light of *United States v. Booker*, *see* 543 U.S. 220, 244, 245 (2005) (holding that the U.S. Sentencing Guidelines must be treated as advisory rather than mandatory to avoid violating the Sixth Amendment's right to a jury trial, which requires that, other than a prior conviction, only facts admitted by a defendant or proved beyond a reasonable doubt may be used to increase the defendant's statutory sentence); *see also*

Def.'s Mot. for Leave to Amend § 2255 Mot., ECF No. 63; Order (Feb. 18, 2010) at 2, ECF No. 85 (granting defendant's motion to amend his § 2255 motion). In January 2011, the defendant's request for resentencing in light of *Booker* was granted, and his § 2255 motion was otherwise denied. *See* Order (Feb. 18, 2010) at 3 (denying defendant's § 2255 ineffective assistance claim); Min. Entry (Jan. 28, 2011) (setting *Booker* resentencing date at a status conference).

In connection with the defendant's resentencing, Judge Kennedy ordered that a new PSR be prepared. *See* Referral to Probation Office for Updated PSR (Jan. 28, 2011); Resentencing Presentence Investigation Report (Apr. 14, 2011) ("2011 PSR") ¶ 7, ECF No. 91 ("[O]n January 28, 2011, the Court ordered the defendant be resentenced in light of the *Booker* decision."). The 2011 PSR applied the 2002 GUIDELINES MANUAL, *see* 2011 PSR ¶ 16, and again determined that the base offense level for grouped Counts 1 and 2 was 26 and, because the defendant was a career offender, his final offense level was 37, pursuant to U.S.S.G. § 4B1.1, *see* 2011 PSR ¶¶ 23, 29. His sentencing range under the GUIDELINES MANUAL remained the same: 360 months to life on Counts 1 and 2, to which was added the consecutive term of 60 months on Count 3, pursuant to U.S.S.G. § 4B1.1(c)(2)(A), for a guideline range of 420 months to life, 2011 PSR ¶¶ 22, 85; Resentencing Tr. (May 12, 2011) at 16:12-18.

The government and the defendant both objected to use of the 2002 GUIDELINES MANUAL, and instead contended that "the 2010 guidelines and supplement to the guidelines" should be used. 2011 PSR at 24–25. The government urged that the base offense level for Count 2 should be "based on the amount of drugs and in light of the amendments to the guidelines," and the defendant "concur[red] with the government . . . because of the 'change in law regarding the quantity of crack cocaine.'" *Id.* at 24. In response, the Probation Office explained that if the "2010 Sentencing Guidelines and the Supplement to the 2010 Sentencing

Guidelines" were used, the base offense level on Count 2 "would be level 18" because that conviction involved "more than 5.6 grams but less than 11.2 grams," *id.*, but "the defendant's case [was] before the Court for reconsideration and resentencing based on the US v. Booker decision and not the retroactivity of" the Guidelines, *id.* In any event, "resolution of this objection would not effect the defendant's total guideline calculation, in light of the career offender status." *Id.* at 25.[3]

At the resentencing hearing, on May 12, 2011, the defendant was present and heard. *See* Resentencing Tr. (May 12, 2011) at 14:13–16:11. Judge Kennedy rejected the Probation Office's use of the 2002 GUIDELINES MANUAL and concluded instead that "the sentencing manual for this year is the appropriate sentencing manual to use," *id.* at 16:16-17, but that conclusion did "not affect" the defendant's "guideline range" of 420 months (35 years) to life, the identical range applicable at his initial sentencing hearing in 2003, *id*. at 16:12-18. The defendant continued to face a mandatory minimum sentence of 20 years stemming from his convictions on Counts 1 and 3 for unlawful possession of a firearm and ammunition by a convicted felon, and using, carrying and possessing a firearm in furtherance of a drug trafficking offense, respectively. Resentencing SOR at 3.

---

[3]      The Probation Office stated, "Nevertheless, the defendant's case is before the Court for reconsideration and resentencing based on the US v. Booker decision and not the retroactivity of the 2007 Crack Guidelines Amendment,"  2011 PSR at 24, apparently referring to Guideline Amendment 706, effective November 1, 2007, which reduced the base offense level for offenses involving "[a]t least 5 G but less than 20 G of Cocaine Base" to 24, *see* U.S.S.G. App. C, amend. 706 (eff. Nov. 1, 2007) ("Section 2D1.1(c)(8) is amended by striking 'At least 4 G but less than 5 G of Cocaine Base' and inserting 'At least 5 G but less than 20 G of Cocaine Base.'").  At the time the 2011 PSR was prepared, however, the defendant's base offense level on Count 2 was Level 18, as the PSR noted, not because of Amendment 706 in 2007, but because of Amendment 748 in 2010, which reduced the applicable base offense level on an emergency basis to conform the drug quantity table in U.S.S.G. § 2D1.1 to FSA's sections 2 and 3.  *See* U.S.S.G. App. C, amend. 748 (eff. Nov. 1, 2010) ("Section 2D1.1(c) is amended . . . in subdivision (11) in the third entry by striking '2' and inserting '5.6'; by striking '3' and inserting '11.2.'").

The defendant requested a 20-year sentence, below the advisory guidelines at the mandatory minimum sentence. *See* Resentencing Tr. (May 12, 2011) at 10:7-13 (defense counsel stating that "the Court can find that under 18 U.S.C. 3553(a) that a sentence of 20 years," the "mandatory minimum sentence," is "no more than necessary"). As support for this sentence reduction, defense counsel highlighted the FSA's reduction in crack cocaine penalties, while acknowledging that the mandatory minimum penalty for Count 2 was "still ten years," *id.* at 3:23, due to the FSA's silence as to its retroactive application to offense conduct occurring prior to August 3, 2010, *id.* at 3:23-25.[4] The Probation Office and the government concurred that the ten-year mandatory minimum continued to apply to Count 2. 2011 PSR at 1, ¶ 84; Gov't's Sentencing Mem. ¶ 3.B, ECF No. 94. Nevertheless, defense counsel pressed that the defendant could be "resentence[d] . . . in light of the laws that currently exist," Resentencing Tr. (May 12, 2011) at 3:8-9, stating that "I would note that although it hasn't been -- there's no retroactive determinations about the drug quantities as it affects crack have changed substantially since the time that Mr. Holmes was convicted," *id.* at 3:23–4:2. He further urged that consideration of the FSA's revised mandatory minimums for crack cocaine offenses indicated that the 20-year mandatory minimum term of imprisonment, though below the advisory sentencing range of 35 years to life incarceration, was warranted and "more than necessary to comply with the statutory factors set forth in 18 U.S.C. § 3553(a)." Def.'s Sentencing Mem. at 1, ECF No. 95. Defense counsel pointed out that the "current . . . threshold is 28 grams" for Count 2, *id.* at 8 (citing 21 U.S.C. § 841(b)(1)(B)(iii)), and that "determinations about the drug quantities as it affects crack have changed substantially since the time that [he] was convicted,"

---

[4]        Indeed, years later, the D.C. Circuit acknowledged in *United States v. Palmer*, 854 F.3d 39, 47, 51 (D.C. Cir. 2017), that "an open question" still exists "in this circuit whether, on collateral attack, [FSA's] reduced penalties are applicable" to "a resentencing pursuant to Section 2255."

Resentencing Tr. (May 12, 2011) at 3:25–4:1.  Even though the defendant's sentencing range

under the 2011 GUIDELINES MANUAL remained the same as in 2003, defense counsel noted that

the base offense level for the defendant's conviction on Count 2, involving 9.2 grams of cocaine

base, a "relatively small" quantity, was now "Level 18" if "we're just looking at [the] drug

offense and leaving out [the] armed career criminal characteristics."  *Id.* at 4:4-9.  Finally,

defense counsel urged the Court to take into account the changed "nature and circumstances" of

the defendant's Count 2 offense, Def.'s Sentencing Mem. at 8, as "recognized" by "Congress"

and "the sentencing commission," Resentencing Tr. (May 12, 2011) at 4:2-3, the need to avoid

"disparities at sentencing," *id.* at 5:1, and the fact that this offense did not involve "[m]uch larger

quantities of drugs" like "a kingpin," *id.* at 6:11-12.

Judge Kennedy considered these arguments and granted the defendant's request for a

downward variance from the low end of the guideline range of 35 years to resentence him to 25

years' imprisonment.  *See* Resentencing Tr. (May 12, 2011) at 2:18-19 ("The Court has read

your presentence memoranda and the presentence report, of course."); *id.* at 4:20-24 (Court

raising issue of "avoiding disparities . . . in sentencing"); *id.* at 16:19-21 (Court announcing

sentence to be imposed after "having considered the advisory guideline and all the other factors

that the Court must consider in 18 United States Code § 3553").  In particular, the defendant was

sentenced to concurrent terms of 240 months' imprisonment on Counts 1 and 2, and a 60-month

consecutive term of imprisonment on Count 3, followed by 5 years of supervised release on

Counts 1 and 3, and 8 years of supervised release on Count 2, all to run concurrently.

Resentencing Tr. (May 12, 2011) at 16:19–17:5.  When imposing this sentence, Judge Kennedy

concluded that although 25 years was "stiff," *id.* at 16:24, the sentence was "sufficient but not greater than necessary," Resentencing SOR at 3.[5]

### C.    The Defendant's Pending Section 404 Motion

The defendant has served approximately 17.5 years of his 25-year prison sentence and has "approximately 3 years of good time and jail credit." Def.'s Mot. at 2. He now renews his request for the 20-year sentence he sought unsuccessfully at his 2011 resentencing, but pursues this sentence reduction pursuant to Section 404 of the First Step Act. First Step Act § 404(b) (permitting "[a] court that imposed a sentence for a covered offense" to, on motion of a defendant, "impose a reduced sentence as if sections 2 and 3 of the [FSA] were in effect at the time the covered offense was committed"). In specific terms, the defendant requests concurrent 15-year terms of imprisonment on Counts 1 and 2, and a consecutive 60-month term of imprisonment on Count 3, totaling 20 years, to be followed by concurrent supervised release terms of 6 years on Count 2 and 5 years on Counts 1 and 3. Def.'s Mot. at 10.

Following completion of briefing on the defendant's motion on July 18, 2019, *see* Def.'s Mot.; Gov't's Opp'n; Def.'s Reply, ECF No. 127, the Court, *sua sponte*, directed the parties to show cause why the defendant's motion is not barred by First Step Act Section 404(c)'s direction that "[n]o court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the [FSA]." Min. Order (Aug. 8, 2019); Gov't's Resp. to Order to

---

[5]    The defendant notes that he subsequently sought the D.C. Circuit's review of his 2011 resentencing by appealing the district court's denial of his motion for a certificate of appealability, *see* Mem. & Order (Feb. 24, 2012), ECF No. 101, "but the D.C. Circuit did not decide his appeal because it found that there was no order disposing of [his] *Booker* claim," Def.'s Mot. at 8. The defendant's request for resentencing was then "formally" granted in a written order *nunc pro tunc* to January 28, 2011. Order (Nov. 29, 2017) at 1–2, ECF No. 114. Subsequently, in June 2019, this case was reassigned to the undersigned Chief Judge. Min. Entry (June 19, 2019); *see* D.D.C. LOCAL CRIM. R. 57.14(d).

Show Cause ("Gov't's OSC Resp."), ECF No. 130; Def.'s Resp. to Order to Show Cause

("Def.'s OSC Resp."), ECF No. 131. The defendant's motion is now ripe for resolution.

## II.    DISCUSSION

"Congress enacted Section 404 of the First Step Act to further the objective of the FSA

by making sections 2 and 3 of the FSA retroactively available." *United States v. White*, 2019

WL 3719006, at *9 (D.D.C. Aug. 6, 2019). Section 404, titled "Application of Fair Sentencing

Act," provides in full:

> (a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.
>
> (b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.
>
> (c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

"Eligibility for relief under Section 404 is limited to defendants previously sentenced for

'a covered offense,' as defined in subsection (a), and not subject to the 'limitations' in subsection

(c)." *White*, 2019 WL 3719006, at *9 (quoting First Step Act §§ 404(a), (c)). "For eligible

defendants, subsection (b) authorizes a court to exercise discretion to adjust the sentence by

'impos[ing] a reduced sentence as if sections 2 and 3 of the [FSA] . . . were in effect at the time

the covered offense was committed.'" *Id.* at *10 (alterations in original) (quoting § 404(b)).

Section 404(b) permits an adjustment to an "otherwise final sentence[] only as expressly authorized in Section 404," and does not entitle a defendant "to a plenary resentencing hearing" at which he is present. *Id.* at *17.

As noted, the parties agree that the defendant is eligible for relief, and that the limitations in Section 404(c) do not apply. *See* Def.'s Mot. at 3 n.1; Def.'s OSC Resp. at 1; Gov't's Opp'n at 10 n.7; Gov't's OSC Resp. at 2. Section 404(c) applies strict limits on the Court's power to reduce a sentence of an otherwise eligible defendant. Simply put, no sentence modification motion may be "entertain[ed]" for a sentence either "previously imposed or previously reduced in accordance with the amendments made by" FSA's sections 2 and 3. First Step Act § 404(c). Contrary to the parties' position, Section 404(c) operates to disqualify the defendant for sentence modification relief.

Here, the sentence imposed on the defendant at his 2011 resentencing was in conformity with the amendments made by FSA's sections 2 and 3 because (1) the 2011 GUIDELINES MANUAL, which was amended to conform with FSA's sections 2 and 3, was applied on resentencing; (2) the defendant successfully obtained a variance below his sentencing range under the GUIDELINES MANUAL after arguing that FSA's reduced penalty for his crack cocaine offense on Count 2 should be considered as part of the nature and circumstances of that offense, and the need to avoid unwarranted sentencing disparities, under 18 U.S.C. § 3553(a); and (3) even though FSA's sections 2 and 3 were not applied to reduce the defendant's statutory penalty for his conviction on Count 2, Section 404(c) does not solely prohibit entertaining sentence reduction motions for sentences imposed "under" FSA's sections 2 and 3, as the parties posit. Each of these reasons is discussed in turn.

First, on resentencing, the GUIDELINES MANUAL in effect on May 12, 2011 was applied, and as a result, the defendant was resentenced "in accordance with the amendments made by" FSA's sections 2 and 3. *See United States v. Martin*, No. 1:05CR21, 2019 WL 3268835, at *2 (N.D.W. Va. July 19, 2019) (finding defendant's motion barred by Section 404(c) because he "was resentenced using the 2010 Edition of the United States Sentencing Guidelines, which incorporated sections 2 and 3 of the [FSA]"); *United States v. Curb*, No. 06 CR 324-31, 2019 WL 2017184, at *5 (N.D. Ill. May 7, 2019) (concluding that under Section 404(c), "to assess whether one has obtained relief 'in accordance with' the FSA, . . . one must consider whether the conforming amendments of the guidelines provided such relief"). Indeed, when "Congress enacted the [FSA]," Congress "directed the Sentencing Commission to issue updated guidelines within ninety days." *Palmer*, 854 F.3d at 45. "The Commission responded by reducing the base offense levels for quantities of crack cocaine, first on an emergency basis," effective in November 2010, and "then through a permanent amendment" effective in November 2011, which was made retroactive at the same time. *United States v. Swangin*, 726 F.3d 205, 206 (D.C. Cir. 2013); U.S.S.G. App. C, amend. 748 (eff. Nov. 1, 2010) (emergency amendment) (reducing base offense levels for crack cocaine in the drug quantity table in U.S.S.G. § 2D1.1 "to account for the changes in the statutory penalties made in section 2 of the [FSA]" and "ensure[] that the relationship between the statutory penalties for crack cocaine offenses and the statutory penalties for offenses involving other drugs is consistently and proportionally reflected"); U.S.S.G. App. C, amend. 750 (eff. Nov. 1, 2011) (permanent amendment); U.S.S.G. App. C, amend. 759 (eff. Nov. 1, 2011) (making amendment 750 retroactive). Since the defendant was resentenced under the 2011 GUIDELINES MANUAL in effect on May 12, 2011, which had incorporated into the Guidelines the emergency conforming amendments to implement FSA's revised statutory

penalties, he was resentenced "in accordance with"—that is, in conformity with—the "amendments made by" FSA's sections 2 and 3.  First Step Act § 404(c).[6]

The parties counter that despite using the GUIDELINES MANUAL in effect on May 12, 2011, if the FSA had been applied, the defendant's guideline range would have been different than the range of 420 months (35 years) to life, the identical range applicable at his initial sentencing hearing in 2003.  *See* Resentencing Tr. (May 12, 2011) at 16:12-18.  They explain that "[t]he FSA, in lowering the statutory maximum defendant faces from life to 30 years" on Count 2, would have reduced the defendant's "career offense level from 37 to 34," since U.S.S.G. § 4B1.1(b) sets an offense level of 37 for a qualifying offense with a statutory maximum of life in prison, and an offense level of 34 for a qualifying offense with a statutory maximum of 25 years or more.  Gov't's Opp'n at 11; *see also* Def.'s Reply at 2 n.1; U.S.S.G. §§ 4B1.1(b)(1), (b)(2).  The parties thus conclude that this change in offense level would have dropped the defendant's "Guideline range for grouped Counts One and Two from the original range of 360 months to life, to a range of 262-327 months."  Gov't's Opp'n at 11; *see also* Def.'s Reply at 2 n.1.  Based on this guideline analysis, the parties contend that the defendant did not obtain the benefit of FSA's revised statutory penalties in 2011.

This argument is not persuasive not only because it fails to grapple with the fact that the FSA's reduced penalties for crack cocaine offenses were expressly considered at resentencing but also because the parties' guideline analysis is incomplete.  Even if the defendant's guideline range on Count 2, under U.S.S.G. § 4B1.1(b)(2) were 34, with a resulting guideline range at a

---

[6]     The government has argued elsewhere that defendants who have received the benefit of FSA conforming guideline amendments are not eligible under Section 404(c).  *See, e.g.*, *Curb*, 2019 WL 2017184, at *4 (describing government's argument that "[b]ecause [the defendant] has already received a sentence reduction in accordance with the FSA amendments and implementing guideline amendments, . . . [the defendant] is ineligible for any further reduction based on the First Step Act" Section 404(c)).  Here, however, the government makes no mention of the fact that the defendant was sentenced under the Guidelines Manual in effect on May 12, 2011 when arguing that Section 404(c) poses no bar to the defendant.  *See generally* Gov't's OSC Resp.

Criminal History Category VI, of 262-327 months, his sentencing range, with the addition of 60 months for Count 3, would be 322-387 months and, since this is less than the guideline range set out in the table at U.S.S.G. § 4B1.1(c)(3), which applies when the defendant is also convicted of a gun offense under 18 U.S.C. § 924(c) and is greater than "the guideline range that results by adding the mandatory minimum consecutive penalty required by the . . . §924(c) . . . count[] to the minimum and maximum of the otherwise applicable guideline range determined for the count(s) of conviction other than the . . . § 924(c) . . . count[]," U.S.S.G. § 4B1.1(c)(2)(A), his final guideline range would be 360 months to life, under U.S.S.G. § 4B1.1(c)(3). He was already resentenced to a sentence substantially below that at his 2011 resentencing.

The second reason that the defendant was previously sentenced "in accordance with the amendments made by" FSA's sections 2 and 3 is because at the 2011 resentencing, he successfully obtained a variance after arguing that FSA's recently amended penalties for his crack cocaine conviction on Count 2 was relevant in considering the nature and circumstances of his offense, as well as the need to avoid unwarranted sentencing disparities. *See United States v. Garrett*, No. 11-CR-40004-JPG, 2019 WL 1377021, at *2 (S.D. Ill. Mar. 27, 2019) ("The Court cannot entertain the defendant's motion because it previously imposed the defendant's sentence in accordance with the amendments made by [FSA], which were already effective at the time he was sentenced in June 2011.").

The parties ignore the discussion of the FSA that occurred at the 2011 resentencing hearing, asserting that "there was never any discussion" at the 2011 resentencing "about the FSA and the statutory sentencing range changes." Gov't OSC Resp. at 3 n.2; Def.'s OSC Resp. at 3 ("At the May 12, 2011 resentencing, there was no mention of the FSA."). That assertion is factually incorrect. To be sure, unsurprisingly, neither the FSA nor the defendant's drug

conviction on Count 2 was the sole focus at the 2011 resentencing hearing because the defendant's convictions on Counts 1 and 3 mandated a 20-year minimum term of imprisonment, regardless of whether the statutory mandatory minimum on Count 2 was 10 years. Even so, the defendant supported his argument for a variance in 2011 by pointing out that the "current . . . threshold is 28 grams" for his conviction on Count 2, Def.'s Sentencing Mem. at 8 (citing 21 U.S.C. § 841(b)(1)(B)(iii)), and "the drug quantities as it affects crack have changed substantially since the time that [he] was convicted," as recognized by "Congress" and the "sentencing commission," Resentencing Tr. (May 12, 2011) at 3:25–4:3. To that end, the defendant's objection to use of the 2002 GUIDELINES MANUAL was sustained, and he successfully argued for application of the Guidelines then in effect, due to the "change in law regarding the quantity of crack cocaine." 2011 PSR at 24. The defendant then explained at the resentencing hearing that the base offense level for his conviction on Count 2, involving 9.2 grams of cocaine base, a "relatively small" quantity, was now "Level 18" if "we're just looking at [the] drug offense and leaving out [the] armed career criminal characteristics." Resentencing Tr. (May 12, 2011) at 4:4-8. Judge Kennedy took into account these arguments about FSA's statutory penalty changes when granting the defendant's request for a variance. Thus, the defendant's sentence was imposed "in accordance with," or in conformity with, the amendments made by FSA's sections 2 and 3.

The defendant makes a last gasp effort to discount the consideration given to the FSA at his 2011 resentencing by arguing that the 25-year sentence Judge Kennedy imposed "was a 33.3% variance from" the guideline range at the time, so "[t]he same variance from the low end of today's Guidelines range (262 months)," as incorrectly calculated by the parties for the reasons discussed *supra*, "is approximately 175 months of imprisonment." Def.'s Reply at 2.

Thus, in the defendant's view, a 180-month sentence (15 years) on Count 2, is warranted to reflect Judge Kennedy's "original variance." *Id.* This proportional variance argument illustrates precisely why Section 404(c) bars additional sentence modification relief through Section 404. Judge Kennedy concluded that 240 months (20 years) was an appropriate term of imprisonment for Count 2, given all the circumstances and the defendant's criminal history, and that the overall sentence imposed was "stiff," but "sufficient to [] serve all the legitimate aims of sentencing," even after taking into account the defendant's argument that Congress and the Sentencing Commission revised their judgments about the appropriate penalties for crack cocaine offenses. Resentencing Tr. (May 12, 2011) at 16:24–17:1. The presumption is that "a district court imposing an alternative non-guidelines sentence took into account all the factors listed in § 3553(a) and accorded them the appropriate significance," even if a district court does not "refer to *each* factor listed in § 3553(a)." *United States v. Warren*, 700 F.3d 528, 533 (D.C. Cir. 2012) (emphasis in original) (internal quotation marks omitted) (quoting *United States v. Ayers*, 428 F.3d 312, 315 (D.C. Cir. 2005), and *United States v. Simpson,* 430 F.3d 1177, 1186 (D.C. Cir. 2005)). Any additional downward variance, again accounting for the FSA, would doubly incorporate the effect of FSA's section 2 into the sentence imposed, a windfall that Section 404(c) was designed to avoid.

Finally, the parties claim that Section 404(c)'s use of the phrase "in accordance with" means "under," and since FSA section 2's reduced statutory penalty range for Count 2 was not applied at the 2011 resentencing, the defendant's 2011 resentencing was not "under" FSA's section 2. Gov't OSC Resp. at 2 (arguing defendant's "sentence was neither imposed nor previously reduced under the FSA"); Def.'s OSC Resp. at 1, 5 (adopting "all the arguments made by the government" in its Order to Show Cause Response, and arguing that neither party asked

that the FSA "be applied to [the defendant's] resentence"). Section 404(c)'s exclusion of sentences "previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of" FSA is not so narrow. A review of the text, legislative history, and purpose of Section 404(c) makes clear that the parties' reading of "in accordance with" in Section 404(c) to mean "under," rather than what it says—"in accordance with"—is wrong.

Turning first to Section 404(c)'s text, the phrase "in accordance with" must be given its plain and ordinary meaning because Congress did not define that term otherwise. *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995) ("When terms used in a statute are undefined, we give them their ordinary meaning."); *In re Grand Jury Investigation*, 916 F.3d 1047, 1055 (D.C. Cir. 2019) ("Congress is presumed to use words to have their ordinary meaning absent indication to the contrary."). Dictionary definitions provide that ordinary meaning. *See SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018) (relying on Oxford English Dictionary to determine the ordinary meaning); *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 407–08 (2011) (citing five dictionaries to determine ordinary meaning).

As relevant here, the ordinary meaning of "in accordance with" is "in conformity with" or "in agreement with." *See, e.g.*, *In accordance with*, OXFORD ENGLISH DICTIONARY (3d ed. 2011) ("[I]n agreement or harmony with; in conformity to; according to."); *Accordance*, THE NEW OXFORD AMERICAN DICTIONARY (2d ed. 2005) ("([I]n phrase in accordance with) in a manner conforming with."); *Accordance*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED (2002) ("Agreement . . . now used chiefly in the phrase *in accordance with*."). Thus, under Section 404(c), "[t]o be 'in accordance' does not require precise equivalency, but only agreement, conformity, or consistency." *Curb*, 2019 WL 2017184, at *4. As discussed *supra*, the defendant's sentence was in conformity with FSA's reduced penalties since the

GUIDELINES MANUAL in effect on May 12, 2011 was applied, and the defendant successfully obtained a variance below the guidelines range, after arguing FSA's section 2 reduced the penalty for his conviction on Count 2.

To be sure, "in accordance with" may mean "under," as the parties assert, in some contexts, but not as used in Section 404(c). *See Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 40–41 (2008) (finding "credible" that the word "under" in a statute could mean "in accordance with" but rejecting that interpretation due to other contextual indicators). The surrounding text in Section 404(c) belies that narrow definition.

"If § 404(c) is read" as the parties suggest, then the provision's "language about sentences previously '*reduced* in accordance with the amendments made by sections 2 and 3 of the [FSA]' would be a nullity." *Curb*, 2019 WL 2017184, at *4 (alteration in original) (emphasis added). Sentences cannot be reduced "under" FSA's sections 2 and 3 since those provisions are not retroactive for defendants already sentenced. *See Dorsey v. United States*, 567 U.S. 260, 281 (2012); *Swangin*, 726 F.3d at 207 ("[A] defendant convicted and sentenced prior to [FSA's] effective date cannot benefit from the Act's new mandatory minimums . . . ."); *United States v. Bigesby*, 685 F.3d 1060, 1066 (D.C. Cir. 2012) (explaining the defendant was not "entitled to a reduced sentence under" the FSA, because the FSA "was enacted eight months after her . . . sentencing, and it is not retroactive"). Thus, "there are no defendants who obtained . . . reduced sentences by invoking sections 2 or 3 of the FSA." *Curb*, 2019 WL 2017184, at *4. Rather, "[t]he only way any sentence has ever been reduced 'in accordance with' the FSA," prior to Section 404, "is by means of the 'conforming amendments' to the guidelines." *Id.*

Hence, the parties' narrow reading of Section 404(c)'s "in accordance with" language does not account for the broader class of sentences that trigger the limitations in that subsection

and bar entertaining a sentence reduction motion, including, as here, for a sentence imposed on resentencing in conformity with and after consideration of the guideline amendments effectuating FSA's sections 2 and 3.

The legislative history and purpose of Section 404(c)'s limitations further confirm that the phrase "in accordance with" carries its ordinary meaning of "in conformity with."  As a "section-by-section summary" prepared by the Senate Judiciary Committee in the month before the First Step Act's passage explained, Section 404 "permits offenders sentenced under [the provisions amended by FSA] *before they were modified* to petition the sentencing court for a reduction in sentence *consistent* with the new crack cocaine sentencing law," but "prohibits . . . *double relief* under the Fair Sentencing Act and the First Step Act."  *S.3649 – The First Step Act, Section-by-Section*, SEN. JUD. COMM. (Nov. 15, 2018) at 6, https://www.judiciary.senate.gov/ imo/media/doc/S.%203649%20-%20First%20Step%20Act%20Section-by-Section.pdf (emphasis added); *see also Senators Unveil Revised Bipartisan Prison, Sentencing Legislation*, SEN. JUD. COMM. (Nov. 15, 2018), https://www. judiciary.senate.gov/press/rep/releases/senators- unveil-revised-bipartisan-prison-sentencing-legislation (press release linking to the section-by- section summary).  Section 404(c) thus complements Section 404's overall "remedial purpose . . . to have courts take a second look at the sentences for those defendants sentenced prior to the FSA," *White*, 2019 WL 3719006, at *15, by excluding those defendants who already benefitted from FSA's enactment from receiving additional sentence reductions consistent with FSA's revised crack cocaine penalties.

The defendant's persistence in renewing his request for a sentence reduction to a 20-year mandatory minimum sentence is certainly understandable, but having obtained a substantial

reduction at his 2011 resentencing, after consideration of FSA's reduced penalties for his crack cocaine conviction, further relief is barred by the limitations in Section 404(c).[7]

## III.    CONCLUSION

For the foregoing reasons, the defendant's Motion to Reduce Sentence Pursuant to the First Step Act of 2018, ECF No. 123, is denied.  An appropriate Order accompanies this Memorandum Opinion.


Date: August 17, 2019

_____
BERYL A. HOWELL
Chief Judge

---

[7]    The defendant argues that he should be granted a discretionary sentence reduction under Section 404(b) because (1) "the mandatory minimum" 5-year "consecutive term required on his § 924(c)" conviction in Count 1 is unnecessary, due to the length of his sentence on Counts 1 and 2; (2) "the inappropriateness of applying career offender/armed career criminal enhancements based on drug-only priors"; (3) his "drug addiction"; and (4) his "age," and "rehabilitation" in prison.  Def.'s Mot. at 13.  These reasons were presented at the defendant's 2011 resentencing hearing, which resulted in a reduced sentence.  Since "entertain[ing]" this motion is barred, *see* First Step Act § 404(c), these reasons for further reduction of the defendant's sentence need not—and may not—be further addressed.