**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANTHONY L. HOLMES,<br><br>Defendant. | Criminal Action No. 02-24<br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION

In 2002, defendant was convicted, following a jury trial, of unlawful possession of 9.2 grams of crack cocaine, use of a firearm in a drug trafficking offense, and unlawful possession of a firearm and ammunition as a convicted felon.  Defendant was sentenced to 35 years' imprisonment, largely because his extensive criminal history of drug and gun possession offenses qualified him as a career offender, under U.S.S.G. § 4B1.1(b), and armed career criminal, under 18 U.S.C. § 924(e), and he was subject to a consecutive mandatory 5-year sentence on one of his firearm convictions.  The sentence imposed was at the bottom of the sentencing range prescribed by the U.S. Sentencing Guidelines, which were mandatory at the time.  Defendant had a plenary resentencing hearing in 2011 and was resentenced to a term of 25 years' imprisonment, below the then-applicable Guidelines range, as modified by the Fair Sentencing Act of 2010 ("FSA"), Pub. L. 111-220, 124 Stat. 2372.

In 2019, defendant moved yet again for a sentence reduction, this time under Section 404 of the First Step Act of 2018 ("First Step Act"), Pub. L. 115-391, 132 Stat. 5194, which allows courts to impose a reduced sentence "as if" the reduced crack cocaine penalties established by Sections 2 and 3 of the FSA were in effect.  The Court denied defendant's motion on the grounds that his resentencing had been "in accordance with" the relevant provisions of the FSA and that

1

he was therefore ineligible, under Section 404(c), for a further sentence reduction under the First Step Act. *United States v. Holmes*, Criminal Action No. 02-24 (BAH), 2019 WL 3859577, at *7–8 (D.D.C. Aug. 17, 2019). Defendant appealed, and the D.C. Circuit remanded, in a single paragraph order, directing the Court to reconsider defendant's eligibility for relief under the First Step Act, citing that the 2011 resentencing "did not accurately account for the reduced statutory penalties in the [FSA]." Order, *United States v. Holmes*, Case No. 19-3066 (D.C. Cir. Sept. 4, 2020).

On remand, defendant filed a supplemental motion for relief under Section 404, and the parties completed briefing, with supplemental submissions, on March 25, 2021. They agree that defendant is eligible for relief under the First Step Act and disagree only whether the Court ought to exercise discretion to reduce defendant's sentence, applying the factors articulated in 18 U.S.C. § 3553(a). For the reasons given below, defendant's motion is granted, and his sentence is reduced to an aggregate term of 20 years' imprisonment, which will result in his immediate release from prison.

## I.    BACKGROUND

The factual and procedural background of this case have been described in detail in this Court's 2019 opinion denying defendant's earlier motion under Section 404 of the First Step Act, *Holmes*, 2019 WL 3859577, and in the D.C. Circuit's earlier opinion addressing defendant's direct appeal of his conviction, *United States v. Holmes*, 385 F.3d 786 (D.C. Cir. 2004). The background below presents a condensed overview of the relevant facts and the procedural history and provides additional context for consideration of defendant's renewed motion upon remand from the D.C. Circuit.

## A.      Factual Background

Defendant Anthony Holmes was stopped driving a speeding car on December 21, 2001 and arrested when police found a loaded nine-millimeter semi-automatic gun, with extra ammunition, under the driver's seat and recovered a total of 9.2 grams of crack cocaine from defendant. *Holmes*, 385 F.3d at 788–89.

Defendant was driving approximately 20 miles per hour above the speed limit when Metropolitan Police Department (MPD) officers pulled him over. *Id.* at 787.  The officers observed defendant suspiciously moving in his seat, "reaching beneath his seat and toward his waist," leading them to believe that he might have a weapon. *Id.* at 787–88.  After defendant opened the window when an officer knocked on it, the officer detected an odor of alcohol and asked Holmes to exit the car. *Id.* at 788.  Defendant complied, and an officer began to pat him down and found a digital pocket scale with "white residue." *Id.*  After finding the scale, the officer resumed the pat-down, and defendant moved his hand towards his pocket.  Defendant was advised to stop, but instead struck the officer and, in the ensuing struggle, punched and kicked the arresting officers. *Id.*  Defendant was restrained and handcuffed.

After defendant was subdued, "the officers searched Holmes' car and found beneath the driver's seat a loaded nine millimeter semi-automatic gun and a bag with 14 rounds of ammunition.  They also searched Holmes himself and found 58 empty Ziploc bags and a plastic bag containing crack cocaine," *id.,* plus another bag of cocaine dropped by defendant in the police transport van and a third bag found on defendant in a subsequent search, *id.*  In total, officers seized 9.2 grams of crack cocaine from defendant. *Id.* at 788–89.

## B.      Procedural Background

Defendant was convicted, after a jury trial, of unlawful possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 1); unlawful

possession with intent to distribute 5 grams or more of cocaine base, in violation of 21 U.S.C.

§§ 841(a)(1), (b)(1)(B)(iii) (Count 2); and using, carrying, and possessing a firearm during a

drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1) (Count 3).  Jury Verdict Form

(Oct. 31, 2002) at 1–2, ECF No. 22; Judgment & Commitment Order (Mar. 13, 2003) ("2003

J&C") at 1, ECF No. 27.

At his initial sentencing hearing, on February 28, 2003, *see* Min. Entry (Feb. 28, 2003),

defendant faced a combined 20-year mandatory minimum term of imprisonment, based on (1)

his convictions under 18 U.S.C. § 922(g)(1) (Count 1), which carried a 15-year mandatory

minimum and up to life sentence, under 18 U.S.C. § 924(e), because he had at least three

previous serious drug offenses; and (2) his conviction for violating 18 U.S.C. § 924(c)(1)(A)(i)

(Count 3), which carried a mandatory consecutive sentence of 5 years' imprisonment.

Presentence Investigation Report (Feb. 21, 2003) ("2003 PSR") at 1, ¶ 71, ECF No. 128.

Defendant's conviction on Count 2, for unlawful possession with intent to distribute 5 grams or

more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii), carried a mandatory

minimum sentence of 10 years and up to life in prison, again due to defendant's prior felony drug

convictions.  *Id.* at 1 (citing 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii)); *see also* Gov't's Notice of

Applicability of Enhanced Penalties and Information Concerning Def.'s Prior Convictions

Pursuant to 21 U.S.C. § 851(a)(1) at 1–2, ECF No. 18 (listing defendant's six prior felony

convictions for illegal drug and gun offenses).[1]  Count 2's 10-year mandatory minimum had no

---

[1]      The government's Notice and Information listed the following six prior felony convictions: (1) Possession
of Cocaine and Possession of a Firearm While Possessing Cocaine (Greensville Cty., Va. Circuit Ct. No. 98-7072,
1999); (2) Attempted Distribution of Cocaine (D.C. Super. Ct. No. F-1794-92, 1993); (3) Attempted Possession
With Intent to Distribute Cocaine and Carrying a Pistol Without a License (D.C. Super. Ct. No. F-1087-90, 1990);
(4) Possession With Intent to Distribute Cocaine and Unlawful Possession of a Pistol (D.C. Super. Ct. No. F-1032-
87, 1987); and (5, 6) Possession With Intent to Distribute PCP, twice (D.C. Super. Ct. Nos. F-1027-86 and F-9093-
85, both in 1986).  Gov't's Notice of Applicability of Enhanced Penalties and Information Concerning Def.'s Prior
Convictions Pursuant to 21 U.S.C. § 851(a)(1) at 1–2; *see also* 2003 PSR ¶¶ 26–31 (same).

effect on the overall 20-year mandatory minimum sentence required to be imposed, however, due to defendant's two gun convictions.

Defendant was sentenced to two concurrent terms of 360 months' imprisonment on Counts 1 and 2, and a consecutive term of 60 months' imprisonment on Count 3.  2003 J&C at 1–2.  This sentence included a career offender enhancement under U.S.S.G. § 4B1.1 and designation as an Armed Career Criminal under 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4.  *See* 2003 PSR at ¶ 19.

In 2006, defendant filed a motion under 28 U.S.C. § 2255, alleging ineffective assistance of counsel, Def.'s Mot. to Vacate Sentence Pursuant to U.S.C. § 2255, ECF No. 41, and defendant later amended that motion to request resentencing in light of *United States v. Booker*, 543 U.S. 220 (2005), Def.'s Mot. for Leave to Amend § 2255 Mot. in Light of *United States v. Booker*, ECF No. 63.  Judge Henry Kennedy, who also presided over defendant's trial and imposed the original sentence, granted defendant's motion for resentencing under *Booker*, held a plenary resentencing hearing in 2011, and sentenced defendant to a below-Guidelines term of imprisonment: two concurrent terms of 240 months' imprisonment on Counts 1 and 2, and a consecutive term of 60 months' imprisonment on Count 3, adding up to a total of 25 years. Amended Judgment at 1–3 (May 25, 2011), ECF No. 98; Statement of Reasons (May 25, 2011) (sealed) ("Resentencing SOR") at 2, 3, ECF No. 99; Resentencing Tr. (May 12, 2011) at 16:12–17:1, ECF No. 122.

After serving approximately 19 years of his 25-year prison term, and with "approximately 3 years of good time and jail credit," defendant filed a motion for a sentence reduction pursuant to Section 404 of the First Step Act, requesting that his sentence be further reduced to an aggregate term of "20 years of imprisonment," allowing for his "immediate

release." Def.'s Mot. Reduce Sentence Pursuant to First Step Act of 2018 ("Def.'s First 404

Mot.") at 2, 10 & n.5, ECF No. 123.[2]

The Court denied defendant's motion, holding that the defendant's 2011 sentence was

"previously imposed . . . in accordance with the amendments made by" the FSA, and as a result,

the defendant's motion was barred by the limitations in Section 404(c). *Holmes*, 2019 WL

3859577, at *9–10. The Court determined that defendant was sentenced in conformity with

Sections 2 and 3 of the First Step Act because "the FSA's reduced penalties for crack cocaine

offenses were expressly considered at resentencing" and because defendant "was already

resentenced to a sentence substantially below [the post-FSA range] at his 2011 resentencing."

*Id.* at *7. Defendant "successfully obtained a variance after arguing that FSA's recently

amended penalties for his crack cocaine conviction on Count 2 was relevant in considering the

nature and circumstances of his offense, as well as the need to avoid unwarranted sentencing

disparities." *Id.* at *8. In coming to this conclusion, the Court held that, "under Section 404(c),

'[t]o be in accordance does not require precise equivalency, but only agreement, conformity, or

consistency.'" *Id.* at *9 (additional internal quotation marks omitted) (alteration in original)

(quoting *United States v. Curb*, 06-CR-324-31, 2019 WL 2017184, at *4 (N.D. Ill. May 7,

2019)).

Defendant appealed, and the D.C. Circuit remanded upon joint motion of the parties.

Order, *Holmes*, Case No. 19-3066 (D.C. Cir. Sept. 4, 2020). The D.C. Circuit explained in a

single-paragraph in a one-page order that while defendant's resentencing occurred after the

effective date of the FSA, the sentencing court did not, at the 2011 resentencing, calculate and

apply the correct Guidelines range including the penalty reductions of the FSA. *Id.* The order

---

[2]       This case was reassigned to the undersigned Judge with the filing of this first motion, on June 19, 2019.

instructed this Court to, "in light of the discrepancy between the Guidelines range calculation and the Fair Sentencing Act's penalty reductions . . . reconsider whether [defendant] is eligible for relief under the First Step Act." *Id.*  This order does not acknowledge that the Court *did* consider the discrepancy in Guidelines range calculations but determined after an analysis of Section 404(c) and consideration of the underlying record that the imposed sentence—which was below the applicable post-FSA guidelines and imposed *after* argument regarding the FSA guidelines changes—was "in accordance with" the reduced penalties of the FSA.  The appellate order provides no guidance on interpreting the scope of Section 404(c)'s limitation and, indeed, does not address the reasoning of this Court's decision.

Following remand, the Court set a schedule for further briefing.  Min. Order (Oct. 23, 2020).  Defendant filed a supplemental motion to reduce his sentence under the First Step Act.  Def.'s Suppl. Mot. for Imposition of Reduced Sentence Under Section 404 of the First Step Act ("Def.'s Mot."), ECF No. 139, and this motion is now ripe for resolution.

## II.    STATUTORY BACKGROUND AND LEGAL STANDARD

The Anti-Drug Abuse Act of 1986 provided three quantity-based penalty ranges for drug offenses under 21 U.S.C. § 841(a): 10 years to life in prison, 5 to 40 years in prison, and up to 20 years in prison.  Pub. L. No. 99-570, 100 Stat. 3207.  "The act 'treated crack cocaine crimes as far more serious' than powder cocaine crimes, 'impos[ing] upon an offender who dealt in powder cocaine the same sentence it imposed upon an offender who dealt in one one-hundredth that amount of crack cocaine.'"  *United States v. White*, 984 F.3d 76, 81 (D.C. Cir. 2020) (quoting *Dorsey v. United States*, 567 U.S. 260, 263 (2012)).

The FSA raised the crack-cocaine threshold quantities for triggering certain penalty ranges for convictions, under 21 U.S.C. § 841, but did not apply these changes retroactively to

defendants who had already been sentenced for crack-cocaine offenses.[3]  This changed in 2018 with the enactment of the First Step Act.

The First Step Act was "intended to rectify disproportionate and racially disparate penalties" in federal sentencing for crack and powder cocaine offenses.  *United States v. Boulding*, 960 F.3d 774, 782 (6th Cir. 2020); *see also United States v. Birt*, 966 F.3d 257, 263 (3d Cir. 2020) ("The point of the First Step Act was to ameliorate certain penalties, including mandatory minimums, attached to drug dealing.").  To this end, Section 404 of the First Step Act allows defendants to seek reduced sentences if they committed certain "covered offense[s]" prior to the enactment of the FSA.

Section 404, titled "Application of Fair Sentencing Act," provides in full:

(a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

---

[3]    Congress increased the quantity triggering the 5-year minimum in 21 U.S.C. § 841(b)(1)(B) from 5 grams to 28 grams, and the quantity triggering the 10-year minimum in § 841(b)(1)(A) from 50 grams to 280 grams, and the quantity for the catch-all provision in 841(b)(1)(C) was thus increased from amounts under 5 grams to amounts under 28 grams.  *See* FSA, § 2.

Eligibility for relief under Section 404 is limited to defendants previously sentenced for "a covered offense," as defined in Section 404(a), and not subject to the "limitations" in Section 404(c).  First Step Act §§ 404(a), (c).  For eligible defendants, Section 404(b) authorizes, but does not require, a court to exercise discretion to adjust the sentence by "impos[ing] a reduced sentence as if sections 2 and 3 of the [FSA] . . . were in effect at the time the covered offense was committed."  First Step Act § 404(b).

## III.    DISCUSSION

The parties maintain the same position they took in 2019 that defendant is eligible for a reduced sentence under Section 404(a) and not barred from receiving relief under Section 404(c), *see Holmes*, 2019 WL 3859577 at *1, a position that this Court previously rejected based on construction of the statutory language in Section 404(c) combined with close review of the 2011 resentencing record, *id*. at *6–10.  The D.C. Circuit's remand order, however, cites an acknowledged inaccuracy in 2011 by Judge Kennedy in calculation of the Guidelines range as a sufficient reason for remand to reconsider eligibility for relief under the First Step Act, indicating this is a sufficient basis to avoid the limitations in Section 404(c).  The parties disagree only over whether the Court should exercise its discretion to reduce defendant's sentence.  After briefly discussing the scope of discretion under the First Step Act to impose a reduced sentence, the relevant factors are discussed and applied to defendant's request for a reduced sentence

### A.    Eligibility for Imposition of a Reduced Sentence

The parties agree, correctly, that defendant's crime of conviction on Count Two, for unlawful possession with intent to distribute five grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii), is a "covered offense" under Section 404(a), and that defendant is therefore eligible for a reduced sentence.  Gov't's Opp'n to Def.'s Suppl. Mot for Imposition of a Reduced Sentence Under Section 404 of the First Step Act ("Gov't's Opp'n") at

9, ECF No. 141; *see also* FSA § 2.[4]  Indeed, Section 2 of the FSA lowered the applicable

statutory and Guidelines range in this case.[5]

Defendant argues, and the government concedes, that defendant was not sentenced "in

accordance with" the FSA amendments to trigger the limitation in Section 404(c), because the

sentencing judge identified the applicable Guidelines range as 420 months to life, whereas the

applicable Guidelines range under the FSA would be 360 months to life, in light of the reduced

statutory maximum for defendant's drug offense.  *See* Def.'s Mot. at 20; *see also, supra*, n.5.

The implication of the D.C. Circuit's cursory remand order, and the argument the parties make

on remand, is that since "[c]alculating the applicable Guidelines range 'should be the starting

point and the initial benchmark' of all sentencing proceedings," Order, *Holmes*, Case No. 19-

3066 (D.C. Cir. Sept. 4, 2020) (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)),

sentencing cannot be "in accordance with" Sections 2 and 3 of the FSA if the correct sentencing

range is not calculated.  Def.'s Mot. at 19–20; *see also White*, 984 F.3d at 87 (observing that

"statutory benchmarks likely have an anchoring effect on a sentencing judge's decision making"

---

[4]     The government suggests, in passing, that "[t]he FSA does not apply to Count One and provides no basis to reduce the defendant's sentence for being a felon in possession of a firearm."  Gov't Opp'n at 13.  This cursory argument, made without any citation, appears at odds with authority to the contrary.  The Seventh Circuit observed in *United States v. Hudson*, for example, that "a defendant's conviction for a covered offense is a threshold requirement of eligibility for resentencing on an aggregate penalty.  Once past that threshold, a court may consider a defendant's request for a reduced sentence, including for non-covered offenses that are grouped with the covered offenses to produce the aggregate sentence."  967 F.3d 605, 611 (7th Cir. 2020); *cf. White*, 984 F.3d at 90 ("The First Step Act 'make[s] possible the fashion[ing] [of] the most complete relief possible.'" (alterations in original) (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975)).

[5]     Defendant's statutory sentencing range on Count Two was 10 years to life under 21 U.S.C. § 841(b)(1)(B) prior to enactment of the FSA.  2003 PSR at 1; 2011 PSR at 1, ¶ 18.  Applying the post-FSA statutory thresholds, defendant would face up to 30 years' imprisonment, without a mandatory minimum, under 21 U.S.C. § 841(b)(1)(C).  Def.'s Mot. at 19.  This change in the applicable statutory range affects defendant's post-FSA Guidelines range.  The lowered statutory maximum for defendant's crack cocaine conviction lowered his offense level for grouped Counts 1 and 2 from 37 to 34.  U.S.S.G. § 4B1.1.  This corresponds to a Guidelines range of 262 to 327 months, decreased from 360 months to life.  U.S.S.G., Ch. V.  When the mandatory 60 months for the § 924(c) count is added, defendant's sentencing range would be 322 to 387 months, but the career offender table in U.S.S.G. § 4B1.1(c)(2)-(3) controls and sets the Guidelines range at 360 months to life.  This is lower than the sentencing range of 420 months to life that applied at defendant's original sentencing, *Holmes*, 2019 WL 3859577 at *3, when the mandatory 60 months for Count 3 was added to the pre-FSA range of 360 months to life for grouped Counts 1 and 2.

and that "[t]he First Step Act provides relief even where the penalty range applicable to a defendant's specific drug amount—whether judge-found or jury-found—would remain the same after application of the [FSA]" (internal quotation marks and citation omitted)).

Defendant received a variance resulting in a sentence below the post-FSA Guidelines range after pressing the point that the lower crack cocaine thresholds amended by the FSA were relevant in considering the nature and circumstances of the offense, as well as the need to avoid unwarranted sentencing disparities.[6]  Under the parties' restrictive reading of Section 404(c), however, defendant was not sentenced "in accordance with" the amendments made by Sections 2 and 3 of the FSA because the sentencing judge did not consider the appropriate variance relative to the correct Guidelines range.  *See Boulding*, 960 F.3d at 784 (observing that "a resentencing predicated on an erroneous or expired guideline calculation would seemingly run afoul of Congressional expectations"); *see also Gall*, 552 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.").

While far from clear that this narrower reading of Section 404(c)'s limitation is correct given Section 404(c)'s reference to sentences "in accordance with," rather than "under," the FSA, the D.C. Circuit did not, in its remand order, expressly adopt this reading of Section 404(c) or address any other aspect of this Court's reasoning.  Instead, it remanded with instructions to consider the Guidelines discrepancy, while also acknowledging that the Court identified the discrepancy in considering defendant's first motion under the First Step Act.  The D.C. Circuit's remand, though not addressing the reasoning of the Court's opinion denying defendant's motion,

---

[6]     Defendant noted that "under the current Guidelines the adjusted offense level based on the quantity of crack cocaine would be 18 not 26," but nevertheless concluded "that under the current Guidelines Chapter Four Enhancements for career offender and armed career criminal would still result in a total offense level of 37."  Def.'s Resentencing Mem. at 3, ECF No. 95.  Similarly, defendant conceded that the Guidelines range for all offenses was 420 months to life.  *Id.*  As described above, *see supra*, n.5, defendant's total offense level on the grouped charges would have been 34, and the Guidelines range for all offenses would be 360 months to life.

implies that the Guidelines discrepancy is dispositive of defendant's eligibility for relief under the First Step Act, and that a sentence cannot be "in accordance with" the FSA if the sentencing judge miscalculates the pre-FSA Guidelines range. Indeed, given the acknowledgement that the Court initially *did* consider the discrepancy, the remand order is only consistent with the conclusion that defendant is eligible for a sentence reduction. In light of the remand order and the parties' agreement, the defendant will be treated as eligible for relief under Section 404 of the First Step Act because the applicable post-FSA Guidelines range was not properly calculated at his resentencing.

### B.   Relevant Factors in Exercising Discretion under Section 404(b)

The D.C. Circuit, in *United States v. White*, 984 F.3d 76 (D.C. Cir. 2020), provided guidance as to the factors that should be considered in determining whether to reduce a defendant's sentence under the First Step Act's Section 404(b). The district court is instructed to consider "all relevant factors" in determining "whether a sentence imposed is sufficient, but not greater than necessary, to fulfill the purposes of § 3553(a)." *Id.* at 90 (citing *Hudson*, 967 F.3d at 609, 611). "These [factors] include new statutory minimum or maximum penalties; current Guidelines; post-sentencing conduct; and other relevant information about a defendant's history and conduct." *Id.* (citing *Hudson*, 967 F.3d at 609). The D.C. Circuit emphasized the importance of considering post-sentencing conduct as part of the analysis of a defendant's criminal history and characteristics, and in imposing a "sentence sufficient, but not greater than necessary to comply with the sentencing purposes set forth in § 3553(a)." *Id.* (quoting *Hudson*, 967 F.3d at 613); *see also Pepper v. United States*, 562 U.S. 476, 504–05 (2011) (holding that district courts "may consider evidence of a defendant's postsentencing rehabilitation at resentencing and such evidence may, in appropriate cases, support a downward variance from the advisory Guidelines range").

12

### C.     Consideration of the 18 U.S.C. § 3553(a) Factors

The starting point is the applicable Guidelines sentencing range, after which the Court will consider the nature and circumstances of the offense, the defendant's history and characteristics, the need to avoid unwarranted sentencing disparities, and defendant's arguments regarding the COVID-19 pandemic and its consideration as part of the § 3553(a) factors.

### 1.     *The Applicable Sentencing Guidelines Range*

The statutory penalties and Guidelines advisory sentencing ranges applicable to defendant's offenses are not in dispute.  Due to his past drug convictions, defendant's conviction on Count One carries a mandatory minimum term of 15 years' imprisonment under the Armed Career Criminal Act ("ACCA"), *see* 18 U.S.C. § 924(e), and Count Three carries a mandatory consecutive term of 5 years' imprisonment, *see id.* § 924(c).  The statutory range on the crack cocaine count, Count Two, was lowered by the FSA.  Given the 9.2 grams of cocaine base for which defendant is accountable, the statutory range is now zero to 30 years' imprisonment, rather than the mandatory minimum of 10 years to life imprisonment that was applied both at his original sentencing and 2011 resentencing.  *See* 21 U.S.C. § 841(b)(1)(C); FSA, § 2 (amending 21 U.S.C. § 841(b)(1)(B)(iii) to increase the statutory threshold from "5 grams" to "28 grams"); *see also* Resentencing Tr. (May 12, 2011) at 3:23 (defense counsel stating that the mandatory minimum penalty for Count 2 was "still ten years"); 2011 PSR at 1, ¶ 84 (identifying the mandatory minimum penalty for Count 2 as 10 years' imprisonment).

Under the Guidelines, Counts One and Two are grouped under U.S.S.G. § 3D1.2(c), resulting, in combination with defendant's criminal history category of VI, in an advisory sentencing range for these grouped counts of 262 to 327 months' imprisonment.  U.S.S.G. §§ 3D1.2(c), 4B1.1(b).  With the additional § 924(c) count, the range for all counts becomes 360 months to life imprisonment.  U.S.S.G. § 4B1.1(b)(2), (c)(2)–(3) (career offenders convicted of

multiple counts, one of which is a conviction under 18 U.S.C. § 924(c), without a reduction under U.S.S.G. § 3E1.1, subject to a *minimum* Guidelines range of 360 months to life); *see also* Def.'s Mot. at 23–24; Gov't's Opp'n at 10.  Defendant's sentence may then be reduced below the applicable Guidelines range at the Court's discretion.  *See, e.g., United States v. Chambers*, 956 F.3d 667, 674 (4th Cir. 2020); *see also* Gov't's Opp'n at 10 n.3 (conceding that downward variance may be granted in considering a motion under Section 404 of the First Step Act); Def.'s Mot. at 24 (observing that "as of October 2020, 28.7 percent of reduced sentences under Section 404 have been below the defendant's applicable Guideline range." (citing U.S. Sent. Comm'n, *First Step Act of 2018 Resentencing Provisions Retroactivity Data Report* 8 (Oct. 2020), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/retroactivity-analyses/first-step-act/20201019-First-Step-Act-Retro.pdf).

### 2. *The Nature and Circumstances of the Offense*

The government argues that the nature and circumstances of the offense weigh against a sentence reduction, highlighting three aspects of defendant's offense conduct when arrested, namely, that: (1) defendant's possession of 58 empty Ziploc bags and a scale found, in addition to the bags containing crack cocaine, Gov't's Opp'n at 11–12; *Holmes*, 385 F.3d at 788; (2) defendant's driving while intoxicated and then throwing "punches and kicks at the officers in an attempt to escape," Gov't's Opp'n at 12; *see also Holmes*, 385 F.3d at 788; and (3) defendant's possession of a fully loaded handgun with extra ammunition, Gov't's Opp'n at 12; *Holmes*, 385 F.3d at 788.  Without disputing these facts, defendant counters that the nature of the offense weighs in his favor, noting, after all, that he possessed just 9.2 grams of crack cocaine in addition to the firearm.  Def.'s Reply in Supp. of Suppl. Section 404 Mot. ("Def.'s Reply") at 3, ECF No. 142.  While his offense conduct was serious, at this point, defendant's incarceration has

"consumed a large part of [his] life and by any measure represent[s] a very substantial punishment that reflects the seriousness of his offenses and the need for general or specific deterrence." *United States v. Douglas*, Criminal Action No. 10-171-4 (JDB), 2021 WL 214563, at *12 (D.D.C. Jan. 21, 2021) (quoting *United States v. Parker*, 461 F. Supp. 3d 966, 983 (C.D. Cal. 2020)).

Moreover, without defendant's ACCA penalty and career offender enhancement, he would have been subject to a Guidelines range of 106 to 117 months' incarceration, including the mandatory consecutive sentence for the firearm offense. Def.'s Reply at 3. In other words, defendant argues, his sentence was not driven by the nature of his offense, but rather by enhanced penalties reflecting his *past* conduct, such that the nature and circumstances of his offense weigh in his favor, particularly since his post-sentencing conduct ameliorates the considerations of his criminal history that were largely responsible for the length of his sentence.

This argument about enhanced penalties driving the length of defendant's sentence is different from mitigating any sentencing disparity between crack and powder cocaine penalties, which was the purpose of the FSA and First Step Act. In fact, this was an argument that could have been made, and was made and considered at the 2011 resentencing. *See, e.g.*, Resentencing Tr. (May 12, 2011) at 4:11–4:15 (defendant arguing for 20-year sentence, explaining "what we've asked for in our sentencing memorandum is recognition that Mr. Holmes' sentence was driven largely under the guidelines by the career criminal characteristics and the armed career criminal characteristics"). Nevertheless, such arguments addressing issues far afield from the legislative goal of reducing crack and powder sentencing disparities may be reconsidered to fashion a new sentence. Defendant would have long been released from prison if he had not been subject to additional criminal penalties and enhancements reflecting past conduct that were

"related to his longstanding substance abuse problem."  Def.'s Reply at 3.  That substance abuse

problem appears to have addressed during his lengthy incarceration, *see infra* Part III.C.3,

militating in favor of a sentence reduction.

### 3. *The Defendant's History and Characteristics*

Defendant makes several arguments related to his history and characteristics, largely

focused on his post-sentencing conduct, which he argues weigh in favor of a sentence reduction,

particularly given the lengthy term he has already served.

First, defendant argues that his past criminal history and the criminal conduct leading to

his convictions in this case stemmed primarily from his substance abuse.  Def.'s Mot. at 27.  The

government does not dispute this point, conceding "that his criminal conduct was related to his

'longstanding substance abuse.'"  Gov't's Opp'n at 12 (quoting Def.'s Mot. at 27).  Defendant

has been addressing his substance abuse problems and indicates that he has been drug and

alcohol free for 19 years.  Def.'s Mot. at 27.

Second, defendant's programming, work, and disciplinary histories indicate some

evidence of rehabilitation.  Defendant has taken classes while incarcerated, including "Money

Smart, Promotion and Marketing, Fundamentals of Communication, Introduction to Basic Case

Law, Anger Management, Men's Health; and several exercise classes, among others."  *Id.* at 29–

30 (citing *id.*, Ex. D ("Inmate Education Data") at 2, ECF No. 139-5).  Since December 2018,

defendant "has worked on the Institutional Sanitation Team from 8am to 2pm daily."  *Id.* at 29

(citing *id.*, Ex. B ("Inmate Profile") at 2, ECF No. 139-3).

Defendant has a very limited disciplinary history and has generally complied with the

rules of the institutions in which he has been incarcerated.  He has had no disciplinary incidents

in almost four years, since June 2017, which was a minor 300-level possession of tobacco

incident.  *Id.* at 30 (citing *id.*, Ex. E ("Disciplinary History") at 2–3, ECF No. 139-6.).  The remaining four incidents from his almost 20 years of incarceration were all similarly minor infractions and occurred more than six years ago.  Disciplinary History at 2–3.

The government minimizes these considerations of how defendant has spent his time during his incarceration, opining that "inmates are expected to adhere to the rules and regulations of the Bureau of Prisons, and not engage in improper behavior . . . [and t]he lack of a substantial disciplinary record, while commendable, is not a factor that warrants a reduction in sentence." Gov't's Opp'n at 14.  The government similarly argues that defendant's history of taking classes and working, while commendable, is "not so unusual" as to warrant a sentence reduction.  *Id.* This is not the right standard, and defendant's conduct and activities while incarcerated weigh in favor of a reduced sentence.  Defendant's conduct does not have to be extraordinary or in any way heroic to warrant a sentence reduction.  Rather, his disciplinary, programming, and work histories are properly considered as part of the defendant's "history and characteristics," under 18 U.S.C. § 3553(a)(1), in order to determine whether the sentence is sufficient, but not greater than necessary, to promote the purposes of sentencing articulated in 18 U.S.C. § 3553(a).

While this conduct may not be extraordinary, or even exceptional, the Court agrees with defendant that his "conduct over the past 19 years imprisoned makes clear that incarcerating him for another 2 1/2 years, until he is almost 57 years old, is not necessary to ensure public safety." Def.'s Mot. at 30.  He has been imprisoned for nearly 20 years, and over that time period has made some efforts to rehabilitate himself, has addressed some of the problems that led to his incarceration, has generally followed correctional facility rules, and has put himself in a position successfully to reenter the community upon release.  Post-sentencing "conduct is relevant to [defendant's] criminal history and characteristics; it is pertinent to the need for the sentence

imposed; and it can inform a court in carrying out its duty to impose a sentence sufficient, but not greater than necessary to comply with the sentencing purposes set forth in § 3553(a)." *White*, 984 F.3d at 90 (quoting *Hudson*, 967 F.3d at 613); *see also Pepper*, 562 U.S. at 492 (holding that, under § 3553(a), "postsentencing conduct . . . sheds light on the likelihood that [defendant] will engage in future criminal conduct"). Defendant's post-sentencing conduct, considered as part of his broader history and characteristics, counsels towards granting his motion and reducing his sentence.

Defendant's extensive criminal history certainly raises concern. In an effort to minimize this criminal history, defendant posits that neither his latest conviction nor any of his prior convictions were for violent offenses. *See* Def.'s Mot. at 25–26. This downplays the seriousness of his crimes, which the government observes included numerous convictions related to possession of firearm while dealing drugs, which can quite obviously carry the risk of, and can lead to, deathly violence. *See* Gov't's Opp'n at 12–13. Furthermore, in the incident that led to his arrest, defendant assaulted officers in an apparent attempt to escape. *Holmes*, 385 F.3d at 788. Defendant's history of drug trafficking and firearms possession warranted a lengthy term of imprisonment, but defendant has been incarcerated for nearly 20 years, and this criminal history is to some extent ameliorated by subsequent evidence of rehabilitation.

### 4.    *The Need to Avoid Unwarranted Sentencing Disparities*

The government argues in passing that defendant is already serving a sentence five years below the Guidelines range, even after the FSA amendments are applied, and that granting an additional downward variance "would cause an unwarranted sentencing disparity between the defendant and other similarly-situated defendants, including both those sentenced before and after the FSA." Gov't's Opp'n at 14. By contrast, in defendant's view, this merely represents

the same variance—a 10-year reduction below the Guidelines range—that the sentencing Judge granted at the 2011 resentencing, updated to reflect the now-applicable Guidelines following enactment of the FSA.  Def.'s Reply at 11.  In other words, the magnitude of the variance defendant requests is the same that he was previously granted in 2011.  Defendant further argues that "any sentencing disparity compared to those whose Guidelines ranges are also 360 months to life, the disparity is not *unwarranted* but rather based on [the sentencing] Judge[]'s reasoned determination of the appropriate variance to apply to Mr. Holmes's case."  *Id.*

The Court is not persuaded that a significant downward variance is appropriate based purely on the magnitude of the variance the sentencing Judge granted in the 2011 resentencing. At the same time, any sentencing disparity is warranted by defendant's post-offense conduct, as well as the length of his sentence relative to his offense conduct.

### 5.   *COVID-19 and the 18 U.S.C. § 3553(a) Factors*

Defendant last argues that the Court should consider the ongoing COVID-19 pandemic in considering the § 3553(a) factors and determining "whether continued detention is necessary for deterrence and whether continued detention results in a 'just' sentence."  Def.'s Mot. at 32 (citing 18 U.S.C. § 3553(a)(2)(A), (B)).  This argument is largely based not on defendant's risk of harm from COVID-19, but rather on the need of additional punishment—which will be particularly harsh and, for the foreseeable future, occur in a setting lacking in rehabilitation programs and social interaction—to serve the aims of § 3553(a).  Given the 19 years that defendant has already served, defendant argues that serving an additional two years under these conditions will "not provide Mr. Holmes with greater deterrence."  *Id.* at 33; *see also* 18 U.S.C. § 3553(a)(2)(B).

The government points out, correctly, that "[t]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release," Gov't's Opp'n at 15 (quoting *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)), and implies that a motion for compassionate release is the proper way to seek release based on risks to inmate health. This is not, however, the argument defendant makes. Rather, defendant highlights the effects of the COVID-19 pandemic on his conditions of imprisonment to argue that continued incarceration is unlikely to advance the purposes of punishment articulated of § 3553(a) but instead expose him to unnecessary risk. *See Dean v. United States*, 137 S. Ct. 1170, 1175 (2017) (describing 18 U.S.C. § 3553(a) as providing "a broad command that instructs courts to 'impose a sentence sufficient, but not greater than necessary, to comply with' the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation"). To the extent that the COVID-19 pandemic is relevant to the analysis prescribed by § 3553(a), this current context is relevant to the Court's consideration of defendant's motion under Section 404. *See White*, 984 F.3d at 90–91.

Moreover, defendant filed a supplement drawing the Court's attention to an extraordinarily high blood pressure reading taken on March 19, 2021 while he was being transferred to another facility. Def.'s Suppl. Reply in Supp. of Section 404 Mot. ("Def.'s Suppl.") at 1–2, ECF No. 143 (citing Ex. H ("Medical Records") at 12, ECF No. 145 (sealed)). Defendant's blood pressure reading of 181/111 is so high as to constitute a "hypertensive crisis." *Id.* (citing American Heart Assoc., *Understanding Blood Pressure Readings*, https://www.heart.org/en/health-topics/high-blood-pressure/understanding-blood-pressure-

readings (last accessed Apr. 16, 2021)).  Defendant has been placed on medication, *id.* at 2, and

is being effectively treated, so standing alone would not present a reason for release.

Here, the Court is satisfied that defendant's already-lengthy sentence has been sufficient

to comply with the purposes of sentencing in § 3553(a), which would be true under normal

conditions, but is particularly true here given the harshened conditions of incarceration brought

on by the COVID-19 pandemic.

* * *

For these reasons, the Court will exercise its discretion under Section 404(b) of the First

Step Act and reduce defendant's sentence to 15 years' imprisonment, to run concurrently, on

Counts 1 and 2, and 5 years' imprisonment, to run consecutively, on Count 3.  Given defendant's

good time credit, *see* Def.'s Mot., Ex. A ("Sentence Monitoring Computation Data") at 4, ECF

No. 139-2, he will likely be immediately released.  Defendant's term of supervised release will

also be reduced to 6 years to reflect the mandatory minimum term now-applicable under 21

U.S.C. § 841(b)(1)(C), down from the 8-year mandatory minimum term of supervised release to

which he was sentenced due to his 21 U.S.C. § 841(b)(1)(B) conviction prior to the enactment of

the FSA.  *See* Def.'s Mot. at 34; Amended Judgment (May 25, 2011) at 4.[7]

## IV.   CONCLUSION

For the foregoing reasons, the defendant's Supplemental Motion for Imposition of a

Reduced Sentence Under to the First Step Act of 2018, ECF No. 139, is granted. His aggregate

term of incarceration is reduced to 20 years' incarceration to be followed by a 72-month period

---

[7]      Defendant has requested a hearing on his pending motion without detailing what, if anything, would be
added at the hearing that has not already been presented.  Def.'s Reply at 14.  Moreover, defendant is not, under the
First Step Act, entitled to a full resentencing hearing.  *United States v. Easter*, 975 F.3d 318, 326 (3d Cir. 2020)
(collecting cases).  The Court finds, given the comprehensiveness of the briefing and the underlying record that a
hearing is unnecessary.

of supervised release.  An Order consistent with this Memorandum Opinion will be filed

contemporaneously.

       Date: April 16, 2021

_____
BERYL A. HOWELL
Chief Judge